Lowell E. ALLEN and Ernestine Allen, Plaintiffs-Appellants,

v.

UNITED MINE WORKERS OF AMERICA 1979 BENEFIT PLAN & TRUST, et al., Defendants-Appellees.

No. 83–1818.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 4, 1983.

Decided Jan. 31, 1984.

Charles L. Martin, Boonville, Ind., for plaintiffs-appellants.

Israel Goldowitz, General Counsel, United Mine Workers of America Health & Retirement Funds, Washington, D.C., for defendants-appellees.

Before WOOD, POSNER and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

The plaintiffs, Mr. and Mrs. Allen, a coal miner and his wife, brought this suit for damages under ERISA (Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq.) against the trustees of a union employee-benefit trust, alleging that the trustees had breached their fiduciary duty to the Allens by refusing to pay the medical expenses incurred when Mrs. Allen had a baby. Both parties moved for summary judgment. The district court granted the trustees' motion and dismissed the complaint. The Allens have appealed, contending that the trustees did not act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). When, as in this case, the trial court with the parties' acquiescence treats the hearing on cross-motions for summary judgment as the trial and enters (as it did) findings of fact and conclusions of law as required in a bench trial by Rule 52(a) of the Federal Rules of Civil Procedure, its findings can be overturned on appeal only if they are clearly erroneous. *Starsky v. Williams,* 512 F.2d 109, 111 (9th Cir.1975); see *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt,* 700 F.2d 341, 349 (7th Cir.1983).

The trust was set up under a collective bargaining agreement with the nation's bituminous coal operators. They agreed to fund the trust according to a schedule of payments based on the amount of coal mined and the number of hours the miners worked. The agreement was due to expire on December 6, 1977. On March 21, 1977, the trustees wrote a letter to the miners warning them that because of wildcat strikes the payments to the trust were running below the expected level and benefits might have to be reduced. Mrs. Allen became pregnant in May. On June 18 the trustees wrote the miners again, this time telling them that benefits *would* be reduced, beginning on July 1. On November 29, with the trust's assets equal to less than one week's average payment of benefits, the trustees again wrote the miners, this time telling them that no benefits would be paid after December 6 if there was an industry-wide strike. There was a strike, and so the payment of benefits ceased. Mrs. Allen gave birth on January 15, 1978, and her claim for payment of the medical expenses related to the birth was denied in

accordance with the trustees' letter of November 29. Payments of medical benefits to miners and their families resumed after the strike was settled in March and a new collective bargaining agreement signed, but the new agreement contained no provision for payment of medical expenses that had been incurred during the strike.

 Although there is no question that the Allens were covered by the union health-benefits plan and that the plan provided for maternity benefits, the Allens do not appear to be contending, and could not successfully contend, that they had a contractual right to the benefits that the trustees refused to pay them. Their claim did not accrue before the collective bargaining agreement expired, for the plan provided for no prenatal benefits and the birth took place after the plan lapsed. Also, the plan provided that "In the event the assets of the [trust] become insufficient to pay the benefits provided hereunder, the benefits may be suspended or reduced to amounts which, in the judgment of the Trustees, can be paid from the assets of the [trust]." There is no dispute that the assets did become insufficient; so the trustees were authorized to suspend them.

There was thus no breach of contract. But the Allens argue that the trustees had a fiduciary duty to make an exception in their letter of termination of November 29 for someone like Mrs. Allen who had already "incurred" the medical expenses for which she was seeking reimbursement, or alternatively that they had a duty to give the Allens earlier notice of termination.

Now Mrs. Allen had not in fact "incurred" these medical expenses as of November 29. All of the expenses for which she is seeking payment in this suit were incurred after she gave birth; the plan as we have said did not provide for prenatal benefits. What is true is that by November 29 she was irrevocably committed to incurring medical expenses in the near future, just as Mr. Allen would have been if on November 28 he had been diagnosed as having a gallstone. The argument is thus that the trustees, rather than announcing a cut-off of all benefits if and when a strike occurred, should have reserved some funds for people like Mrs. Allen who were certain to incur medical expenses in the near future and thus would have particular difficulty obtaining alternative insurance coverage.

 Under ERISA as under common law, state and federal, a trustee's decision with respect to the allocation of an insufficient fund among the trust's beneficiaries will not, in the absence of self-dealing or other evidence of bad faith, be disturbed unless it is "arbitrary and capricious," which is to say, totally unreasonable. See, with respect to ERISA, *Wardle v. Central States, Southeast & Southwest Areas Pension Fund,* 627 F.2d 820, 823–24 (7th Cir. 1980); *Reiherzer v. Shannon,* 581 F.2d 1266, 1272 (7th Cir.1978); *Palino v. Casey,* 664 F.2d 854, 858 (1st Cir.1981); *Bayles v. Central States, Southeast & Southwest Areas Pension Fund,* 602 F.2d 97, 99–100 and n. 3 (5th Cir.1979), and, with respect to both federal and state common law, *Rehmar v. Smith,* 555 F.2d 1362, 1366–67 (9th Cir. 1976); *Maness v. Williams,* 513 F.2d 1264, 1265 and n. 1 (8th Cir.1975); *Kosty v. Lewis,* 319 F.2d 744, 747 (D.C.Cir.1963); *Danti v. Lewis,* 312 F.2d 345, 349 (D.C.Cir.1962); *Szuch v. Lewis,* 193 F.Supp. 831, 833 (D.D.C. 1960); *Forrish v. Kennedy,* 377 Pa. 370, 376, 105 A.2d 67, 70 (1954); *Wilson v. Rudolph Wurlitzer Co.,* 48 Ohio App. 450, 454, 194 N.E. 441, 443 (1934); *Jones v. Jones,* 8 Misc. 660, 668–69, 30 N.Y.S. 177, 182–83 (Sup.Ct. 1894). The reason for the courts' forbearance is practical. When there is not enough money to go around and the shortfall must be allocated among claimants all of whom are blameless, what is called for is an ethical rather than legal judgment; and only if the allocation is made on a basis that strikes the court not merely as questionable or even incorrect but as completely unreasonable will the court step in and either make its own determination or tell the trustees to try again. Cf. *United Mine Workers of America Health & Retirement Funds v. Robinson,* 455 U.S. 562, 575, 102 S.Ct. 1226, 1234, 71 L.Ed.2d 419 (1982); *Rueda v. Sea-*

*farers Int'l Union,* 576 F.2d 939, 942 (1st Cir.1978).

█ We cannot say that the trustees' refusal to set aside funds for persons certain to incur medical expenses in the near future was unreasonable. For one thing, there is no indication that anyone asked them to do this, or that it is commonly done in such cases; and surcharging trustees is a harsh sanction not lightly to be imposed when the trustees were not on notice that their conduct might be thought unfair. For another, it is hard to see how the position of those who like Mrs. Allen are certain to incur medical expenses in the future is morally superior to the position of those who actually, though unexpectedly, incur medical expenses earlier. Presumably during the last week before the strike the trustees continued paying claims as they were received. If they had instead followed the Allens' retroactively offered advice and set aside funds for those whose claims would take a longer time to ripen, it would have meant refusing money to people who had already incurred expenses and for whom, therefore, it would also have been too late to obtain alternative insurance coverage.

█ The second issue is whether the Allens received notice of the termination of their benefits far enough in advance. One of the duties of a trustee is to keep the trust's beneficiaries apprised of developments that may require them to seek alternative protection. See *Palino v. Casey, supra,* 664 F.2d at 859, and cases cited there. The question how much notice is enough is a difficult one where again the courts should be hesitant to intrude their views, recognizing that the trustees are in a better position than they are to balance the benefits of additional notice against the costs, which are not inconsiderable when letters must be sent to thousands of beneficiaries. Two pretermination warnings were sent here, which ought to be enough to satisfy a reviewing court. We therefore need not decide whether any notice is required in a case such as this where the date of termination coincides with the expiration of the collective bargaining agreement; whether,

in other words, trustees have a duty to warn of events that will occur, if at all, only after the plan they are administering expires by its own terms. If Mr. Allen knew that the agreement expired on December 5, he must also have known that if his wife became pregnant less than nine months before that date they would be gambling on the nationwide collective bargaining agreement's being renewed with equivalent medical benefits. To these elementary facts any warning by the trustees that the contract might indeed not be renewed would have added little, yet at significant cost in preparing and especially in mailing the warning. In any event, clearly the Allens knew before Mrs. Allen became pregnant—knew by virtue of the trustees' March letter—that the trust fund was on a shaky financial footing.

But even if the notice was inadequate, there was no causal relationship between lack of adequate notice and the Allens' not having an alternative source of insurance for the medical expenses incurred when Mrs. Allen gave birth. It is exceedingly unlikely that early in 1977, before she became pregnant, the Allens would have shopped around for alternative health insurance on the off-chance that the collective bargaining agreement would not be renewed in time. And once she became pregnant it would have been very difficult for the Allens to have bought alternative insurance, because health insurance normally excepts any condition existing when the insurance is obtained. (The plan in this case disallowed maternity benefits within the first nine months after coverage.) Thus, earlier notice would not have made a difference.

The text of the trust plan, the situation of the trust, the trustees' efforts to give notice, and the simple chronology of events persuade us that the district court was correct in finding that the trustees had not breached their fiduciary duty to the Allens. The judgment for the trustees is therefore

AFFIRMED.