Josephine **KASZUK**, Plaintiff,

v.

**BAKERY AND CONFECTIONARY UNION and Industry International Pension Fund, et al., Defendants.**

**No. 83 C 1177.**

United States District Court, N.D. Illinois, E.D.

Nov. 8, 1984.

Supplemental Memorandum Opinion Jan. 3, 1985.

On Motion for Summary Judgment Feb. 11, 1985.

John G. Jacobs, Susan R. Haerr, Jonah Orlofsky, Plotkin & Jacobs, Ltd., Chicago, Ill., for plaintiff.

James P. Daley, Bell, Boyd & Lloyd, Chicago, Ill., Kenneth F. Hickey, Margery Sinder Friedman, Morgan, Lewis & Bockius, Washington, D.C., Irving M. Friedman, Harold A. Katz, Katz, Friedman, Schur & Eagle, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, Chief Judge.

In 1978, Walter Kaszuk died after suffering a massive heart attack while vacationing in Arizona. He was 63 years old. At the time of his death Kaszuk was, as he had been for 23 years, employed by the National Biscuit Company ("Nabisco") in Chicago, where he worked as a dough mixer. Surviving Mr. Kaszuk was his wife of many years, Josephine Kaszuk.

Shortly after the death of her husband, Mrs. Kaszuk filed an application for benefits with the defendant, Bakery and Confectionary Union and Industry Internation-

al Pension Fund ("the Fund").[1] Mrs. Kaszuk believed she was entitled to survivorship benefits because Walter had contributed to and been a participant in the Fund for over 21 of his 23 years with Nabisco.

The Fund denied Mrs. Kaszuk's application, explaining that she was ineligible for benefits because, *inter alia*, her husband had never elected coverage in the Fund's pre-retirement husband and wife pension plan (the "pre-retirement pension").[2] After exhausting intra-Fund appeal remedies, Mrs. Kaszuk filed this lawsuit. Her complaint, brought under 29 U.S.C. § 1132, alleges that Mr. Kaszuk failed to elect the pre-retirement pension only because the Fund failed to notify him adequately of the pension's election procedures.[3] Mrs. Kaszuk claims that the Fund's failure to provide adequate notice to Fund participants violated certain fiduciary obligations set forth in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. Had the Fund met its obligations and properly advised Mr. Kaszuk of the election procedures, according to the complaint, Walter Kaszuk would have made the necessary election, Mrs. Kaszuk would have received benefits when he died, and the pension would not have been "forfeited."

Plaintiff has moved for partial summary judgment under Fed.R.Civ.P. 56, arguing that the notice provided to Mr. Kaszuk was inadequate as a matter of law, and that the Fund therefore violated its fiduciary duties. The Fund has cross-moved for summary judgment, asserting that it satisfied all of its obligations to Fund participants, including that of giving adequate notice of the availability of and procedures for electing the pre-retirement pension.

Because the central issue in this case revolves around the adequacy of notice provided by the Fund concerning the pre-retirement pension, it is necessary to set forth in some detail the Fund's efforts in this regard.

The first action taken by the Fund to notify participants of the availability of and procedures for electing the pension came in fall of 1976, when the Fund placed an advertisement in the October 1976 issue of the *B & C News*, the newspaper of the union to which Mr. Kaszuk and his coworkers belonged. The ad, which comprised one and one-half columns, appeared on page 7 of the newspaper, and was captioned "Important Notice—Husband and Wife Option." The ad explained that the pre-retirement pension had become available on June 1, 1976, and discussed how the pension worked, and how it was to be elected. Although portions of the ad are easily understood, other parts appear to be quite confusing.

The Fund next notified members of their right to elect the pre-retirement option over one year later in a second ad, printed in the November—December 1977 issue of the *B*

---

1. The Fund is a labor-management trust fund established pursuant to § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), and the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq*. The Fund is administered by a Board of Trustees comprised of an equal number of representatives from contributing employers and from the Bakery, Confectionary and Tobacco Workers International Union.

2. Effective June 1, 1976, Congress required trust funds like defendant to afford participants an option to elect coverage under a "pre-retirement husband and wife pension." *See* 29 U.S.C. § 1055. The pre-retirement pension in defendant's plan provided benefits to surviving spouses if their decedent, the employee, had elected coverage and then died before retiring. In a sense, the pre-retirement pension was similar to insur-

ance. If an employee affirmatively elected coverage, his or her spouse would be protected if the employee died before retirement. In return for this security, however, the employee paid a premium: his or her pension was reduced a fixed percentage for each year of coverage. Thus, if an employee elected coverage, the benefits the employee would receive after retiring would be less than the employee would have received had he or she not elected to protect a spouse through the pre-retirement option.

3. The lawsuit also named as defendant Local Union No. 300, Bakery and Confectionary Workers International Union of America, AFL-CIO ("Local 300"). On September 5, 1984, we dismissed Local 300 as a party-defendant pursuant to a settlement reached by plaintiff and Local 300.

*& C News.* Once again, the ad was inserted on page 7 of the paper. This ad took up nearly a full page, and was somewhat more clearly phrased than the first ad.

Finally, the Fund provided notice of the election procedures in a "Summary Description Booklet" prepared in 1978. It is disputed whether Mr. Kaszuk ever received this booklet, as it was not available to employees until late summer 1978, close to the time Kaszuk died.[4]

DISCUSSION

Plaintiff's claim is premised on the notion that the Fund breached a fiduciary obligation to inform Fund participants in a meaningful way of the steps which must be taken to elect the pre-retirement pension. In arguing that the Fund had such an obligation, plaintiff relies on 29 U.S.C. § 1104 ("§ 1104"), which provides that fiduciaries such as fund administrators must:

.. discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims ...

This section would appear to govern the actions challenged in this case.[5] Indeed, the Fund has conceded that it had a fiduciary duty to give adequate notice of the availability of and election procedures for the pre-retirement pension. *See* Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment ("Defendant's Opposition Memorandum"), at 2.

Notwithstanding this concession, the Fund argues that as a matter of law, the notice it provided satisfied its fiduciary obligations because that notice adhered to a regulation promulgated by the Treasury Department. Plaintiff counters that compliance with administrative regulations would not in and of itself dictate a finding that the Fund satisfied its fiduciary obligations. Rather, plaintiff contends that under § 1104 the Fund, as fiduciary, had an overriding duty to act prudently and fairly in providing notice to Fund partici-

---

**4.** The evidence strongly suggests that Mr. Kaszuk never received this booklet because it was not distributed until shortly before or shortly after he left for his August 1978 vacation, from which he never returned. Even if Kaszuk did receive the booklet, however, and even if it provided clear notice of the election procedures, it would not have satisfied notice requirements. As we understand it, in order to avoid a two-year waiting period for the pre-retirement option, Kaszuk would have had to make his election by March 31, 1978. *See* Memorandum Of Points and Authorities in Support of the Pension Fund's Motion for Summary Judgment, at 4. *See also* International Pension Fund Rules and Regulations, Section 6.05(b). Thus, the Summary Booklet was simply too late, as it arrived in August 1978 and would not have have afforded Kaszuk an opportunity to make a timely election of the pre-retirement pension. Accordingly, we will not consider the Summary Description Booklet in our review of the Fund's notice efforts.

Similarly, we reject the Fund's argument that we should deem the 1976 and 1977 "Rules and Regulations" booklets forms of notice. These

booklets cannot be considered "notice," since they were phrased in a technical manner, did not specifically concern the pre-retirement pension or alert members that pre-retirement pension information was contained within, and were simply compilations of all of the various rules of the Fund, the majority of which had nothing to do with the pre-retirement pension. *See* 26 C.F.R. § 1.401(a)–11; H.Rep. 93–533, *reprinted in* U.S.Code Cong. & Ad.News (1974), p. 4646.

**5.** At least three courts have applied the fiduciary requirements of § 1104 to notice-related questions. *See Hopkins v. FMC Corp.,* 535 F.Supp. 235, 239 (W.D.N.C.1982); *Shlomchik v. Retirement Plan of Amalgamated Ins.,* 502 F.Supp. 240, 245 (E.D.Pa.1980), *aff'd,* 671 F.2d 496 (3d Cir.1981); *Allen v. Atlantic Richfield Retirement Plan,* 480 F.Supp. 848, 851 (E.D.Pa.1979), *aff'd,* 633 F.2d 209 (3d Cir.1981). Because the protective provisions of ERISA are to be broadly construed given "Congress' overriding concern with the protection of plan beneficiaries," *Leigh v. Engle,* 727 F.2d 113, 126 (7th Cir.1984), application of § 1104 to notice questions is reasonable.

pants in light of all surrounding circumstances.

There is some force to plaintiff's argument that the fiduciary obligation imposed by § 1104 may require funds to do more than merely comply with applicable notice regulations. In enacting ERISA, Congress sought to ensure that "the private pension promise ... become real rather than illusory." H.Rep. 93–533, *reprinted in* U.S. Code Cong. & Ad.News (1974), pp. 4639, 4648. Application of an overriding fiduciary standard of fairness and reasonableness, apart from any question of regulatory compliance, would do much to facilitate the realization of this goal.

Moreover, other courts that have considered challenges to fund notice procedures have subjected fund actions to exacting judicial scrutiny. *See, e.g., Palino v. Casey,* 664 F.2d 854, 859 (1st Cir.1981) ("we judge the Trustees' actions [with regard to notice] in accordance with the principle that changes in a fund's eligibility rules must be made, and notice given, subject to the limits of fundamental fairness." (citations omitted)).

This "fundamental fairness" approach suggests that even if funds have technically complied with administrative regulations, a court must still test the notice for its fairness in light of all relevant circumstances. *Cf. Burke v. Metal Carbides Corp.,* No. 81 C 2506, slip op. at 4 (N.D.Ill. Feb. 15, 1983) [Available on WESTLAW, DCTU database] (Grady, J.) (in age discrimination case, fact that notice posted by employer was supplied by Department of Labor did not necessarily mean notice was adequate; the employer's duty to provide accurate notice existed irrespective of compliance with departmental regulations).

On the other hand, there is also something to the Fund's argument that fiduciaries should be able to rely on the detailed and uniform guidance provided by administrative regulations without being subjected to the vagaries of a "fundamental fairness" or "prudent man" test, as those concepts are understood and applied by each reviewing court.

We do not find it necessary to decide the question of whether compliance with the regulations satisfies a fund's fiduciary obligation as a matter of law, however, for all would agree that if administrative regulations do suffice to provide funds with a safe harbor, then funds must comply fully with the terms of those regulations in order to avail themselves of that harbor. In this case, the Fund failed in every way to comply with the regulation it allegedly relied on.

■ Treasury Department regulation 26 C.F.R. § 1.401(a)–(11), relied on by the Fund, authorizes funds to notify participants of plan changes by mail, and provides that when notice is given by mail, one timely notice is all that is necessary to satisfy disclosure requirements. The Fund attempts to bring itself within this regulation by arguing that the advertisements in the *B & C News* constituted notice by mail, as the newspaper was delivered by mail to all subscribers.

The Fund's argument that it provided notice by mail is strained. We think it clear that when a regulation authorizes use of the mail to give notice, it contemplates the mailing of individual notices of some sort, rather than the insertion of an advertisement in a publication that happens to be mailed. *See Staats v. Ohio River Co.,* 570 F.Supp. 22, 24–25 (W.D.Pa.1983), *aff'd,* 735 F.2d 1351 (3d Cir.1984). Our conclusion is bolstered by the fact that a separate Treasury regulation which lists approved methods of notification expressly distinguishes between, and sets out as *alternative methods,* notice "by mailing" and notice "by printing it in a publication of ... an employee organization...." 26 C.F.R. § 1.7476–2(c). Accordingly, the insertion of an advertisement or other notice in a newspaper that is mailed does not, by virtue of the happenstance that the paper is delivered by mail, convert the notice by publication into notice by mailing.

■ Thus, the Fund utilized a method other than mailing to provide notice of the

pre-retirement pension.[6] Title 26 C.F.R. § 1.401(a)–11(C)(ii) states:

... If a method other than mail or personal delivery is used to provide participants with ... information, if [sic] must be a method which is reasonably calculated to reach the attention of a participant ... [and must] ... continue to reach the attention of such participant during the election period applicable to him for which the information is being provide [sic] (as, for example, by permanent posting, repeated publication, etc.).

Because the Fund did not send individual notices by mail to all participants, then, it was obligated under the regulation it cites to provide continual notice in some form. We do not think the notices in the *B & C News* satisfied this obligation. Those notices were not likely to reach the participants continuously throughout the election period; two publications in the space of fourteen months does not in our view constitute "repeated publication."

■ For these reasons, the Fund can find no solace in the Treasury regulation.[7]

■ When Congress promulgated the fiduciary duty and other provisions of ERISA, it sought to ensure that plan participants would receive *effective* notice of any plan changes that might affect their pension rights, so that they would not lose benefits through inadvertence or misunderstanding. *See* H.Rep. 93–533, *reprinted in* U.S.Code Cong. & Ad.News (1974), p. 4646. *See also* S.Rep. 93–127, *id.* at 4871. The administrative regulation cited by the Fund was promulgated with a view toward advancing this important Congressional intent. We do not believe that the Fund's actions were consonant with either the letter or the spirit of the regulation.[8] We find, therefore, that because the Fund did not even comply with the regulation it relies on, it failed to provide adequate notice of the availability of and election procedures for the pre-retirement pension.[9]

6. Plaintiff has submitted undisputed evidence which suggests that the costs involved in mailing out individual notices to eligible Fund participants would not have been prohibitive. *See* Affidavit of Susan L. Leventhal (cost of postage would have been $2,734.55).

7. Inasmuch as we find that the Fund did not comply with the Treasury regulation, we do not reach plaintiff's argument that the regulation is inapplicable to this case. Neither do we decide whether the Department of Labor regulation cited by plaintiff, 29 C.F.R. § 2520.104b–1, applies. We note, however, that if the Labor regulation does apply, the Fund failed to comply with that regulation as well. Although § 2520.-104b–1 permits funds to provide notice through advertisements in union newspapers, it requires that such notice be in the form of a "special insert," and that there be "a prominent notice on the front page of the periodical [which] advises readers that the issue contains an insert with important information about rights under the plan and the Act which should be read and retained for future reference." As we have already noted, the advertisements in the *B & C News* were placed on an inside page rather than in a special insert, and no notice on the papers' cover alerted readers that important information was contained therein.

8. Although we do not decide whether § 1104 imposes a fiduciary duty apart from and broader than regulatory compliance, if such a duty did exist, then we would be inclined to rule that

the notice provided by the Fund in this case breached that duty.

Despite the Fund's knowledge in 1974 that it would have to make the pre-retirement pension available in 1976, it made no efforts to educate or notify participants about this pension until 1976, *after* the pension had become available. When the Fund eventually did get around to providing notice, it did so by including the pre-retirement pension rules in a booklet which contained all other rules of the Fund, and by placing two somewhat unclear advertisements inside a union newspaper. Beyond these minimal attempts at notice, made over a period of two years, the Fund took no steps to contact those who might choose and benefit from the pension program. It did not call meetings to discuss the option; it did not post notice at the plant; it did not mail out individual notices.

Given the novelty and complexity of the pre-retirement pension, and the limited education and experience of those who were entitled to elect coverage under it, and inasmuch as failure to elect the pension could, in effect, work a forfeiture of hard-earned pension rights, the Fund's attempts to provide notice raise serious questions about its fulfillment of fiduciary duties.

9. The Fund urges that our review of its notice procedures is governed by an arbitrary and capricious standard. The Fund cites cases from this and other circuits which have applied that standard to judicial review of trustee actions.

■ Our finding does not necessarily entitle plaintiff to the pension benefits she seeks. Even though the notice provided by the Fund was inadequate, it may be that Mr. Kaszuk in fact had actual notice of the pre-retirement program and its procedures, and simply chose not to elect coverage. Perhaps, for example, he read and understood the notices in the *B & C News*, confusing though they may have been, or learned about the program from some other source. If Mr. Kaszuk did have actual notice, but simply chose to sleep on his rights or to not elect coverage, then common sense dictates that plaintiff's claim must fail.[10]

Moreover, there still remains a question of causality. It is possible that even had Walter Kaszuk received timely and effective notice of his rights under the pre-retirement plan, he would have declined to elect coverage. This may be a genuine possibility, since employees who elected coverage but survived retirement paid a price for the security afforded them by the pre-retirement pension: their post-retirement benefits were reduced. *See* n. 2, *supra. See also* Defendant's Opposition Memorandum, at 17; Supplemental Affidavit of John J. Fleming, at ¶ 8.

We are inclined to place the burden of proof regarding the actual notice and causality questions on the Fund rather than on plaintiff. In other words, the Fund would bear the burden of proving that Walter Kaszuk had actual notice of the election procedures, or that he would not have elected coverage even if he had received reasonable notice. Imposition of this burden might be justifiable as a cost of breaching a fiduciary obligation, and in light of the practical realities of this case. Should the Fund fail to meet its burden, plaintiff would be entitled to the benefits she seeks.

We wish to consider the parties' views on the questions of proving causality and allocation of the burden of proof, and we direct each side to file cross-memoranda addressing these issues by November 30, 1984. These briefs should be limited to ten pages.[11]

CONCLUSION

■ With the limitations set forth in the opinion, plaintiff's motion for partial summary judgment is granted, and we hold that as a matter of law the Fund breached its fiduciary obligation to provide adequate notice. Defendant's cross-motion for partial summary judgment is denied to the extent that it concerns the adequacy of

---

*See, e.g., Wardle v. Central States, Southeast and Southwest Areas Pension Funds,* 627 F.2d 820, 823–24 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *Moore v. Reynolds Metals Co. Retirement Program,* 740 F.2d 454, 457 (6th Cir.1984). The vast majority of the cases utilizing the arbitrary and capricious standard, however, involve eligiblity determination reviews, not notice challenges, *but see Allen v. United Mine Wrks. of Am. 1979 Ben. Plan,* 726 F.2d 352, 354 (7th Cir.1984), and several courts have limited use of the arbitrary and capricious standard of review to cases involving benefits eligibility determinations. *See Struble v. N.J. Brewery Emp. Welfare Trust Fund,* 732 F.2d 325, 333–34 (3d Cir.1984); *Davidson v. Cook,* 567 F.Supp. 225, 239 (E.D.Va. 1983), *aff'd,* 734 F.2d 10 (4th Cir.1984). *See also Central States S.E. and S.W. Areas Pen. Fund v. Kraftco,* 589 F.Supp. 1061, 1071 (M.D.Tenn. 1984); *Nelson v. Joyce,* 404 F.Supp. 489, 491 (N.D.Ill.1975) (do not apply arbitrary and capricious standard in reviewing trustees' decision where decision involves a question of law). To

the extent that an arbitrary and capricious standard might apply to our review, we hold that by failing even to comply with the notice regulation, the Fund's actions were "totally unreasonable," *Allen v. United Mine Wrks., supra,* 726 F.2d at 354, and arbitrary and capricious.

**10.** The fact that Mr. Kaszuk received and read the *B & C News,* however, does not necessarily mean that he read or understood the notices regarding the pre-retirement pension.

**11.** The briefs should also discuss whether plaintiff would have a right to a jury trial. Although plaintiff filed a jury demand on June 7, 1983, we are unclear whether a jury right exists in this kind of case. *See Bugher v. Feightner,* 722 F.2d 1356, 1358–60 (7th Cir.1983); *Wardle v. Central States, Southeast and Southwest Areas Pension Fund, supra,* 627 F.2d at 828–30; *Donovan v. Robbins,* 579 F.Supp. 817 (N.D.Ill.1984); *Ovitz v. Jeffries & Company, Inc.,* 553 F.Supp. 300 (N.D. Ill.1982).

notice issue; it is granted in all other respects.[12]

## SUPPLEMENTAL MEMORANDUM OPINION

We have reviewed the briefs filed by the parties in response to the questions posed in our Memorandum Opinion of November 8, 1984, and we now make the following rulings.

■ We agree with plaintiff that the defendant pension fund must bear the burden of proving that Walter Kaszuk had actual notice of the availability of and procedures for electing the pre-retirement pension, or that he would not have elected coverage even if he had received reasonable notice. We recognize the practical difficulties which the Fund will likely encounter in attempting to establish these points. Still, one side or the other must bear the burden. Since plaintiff has demonstrated that the Fund breached its fiduciary duty by generally failing to provide adequate notice to potential beneficiaries, one of whom was plaintiff's husband, we believe the burden must be placed on defendant. This conclusion is consistent with the policies underlying ERISA and with general trust law. *See, e.g., Leigh v. Engle,* 727 F.2d 113, 138–39 (7th Cir.1984) (burden of proving that breach of fiduciary duty did not damage trust placed on trustee); *Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629, 636 (W.D.Wisc.1979) (once plaintiff proves breach of fiduciary duty, burden shifts to defendant); *Conduti v. Hellwig,* 127 Ill. App.3d 279, 82 Ill.Dec. 686, 696, 469 N.E.2d 220, 230 (1st Dist.1984) (where execution of fiduciary duties is challenged, burden of demonstrating fairness rests on fiduciary).

Although we agree with plaintiff that the Fund must meet its burden by producing clear and convincing evidence, *see, e.g., Bromberg v. Holiday Inns of America,* 278 F.Supp. 417, 422 (N.D.Ill.1966), *aff'd,* 388 F.2d 639 (7th Cir.1967), *cert. denied,* 391 U.S. 912, 88 S.Ct. 1804, 20 L.Ed.2d 652 (1968); *Prueter v. Bork,* 105 Ill.App.3d 1003, 61 Ill.Dec. 620, 622–23, 435 N.E.2d 109, 111–12 (1st Dist.1982), we disagree with her view of the definition of "clear and convincing." The precise meaning of this standard of proof has caused considerable consternation among courts and commentators. Some believe, and plaintiff argues, that "clear and convincing" is the functional equivalent of "beyond a reasonable doubt." *See* Plaintiff's Supplemental Memorandum, at 3. The weight of authority, however, indicates that "clear and convincing" is a less exacting standard than "beyond a reasonable doubt." Rather, it is an intermediate level which lies somewhere between "beyond a reasonable doubt" and the customary civil standard, "by a preponderance of the evidence." *See, e.g., Jones v. United States,* 463 U.S. 354, 103 S.Ct. 3043, 3053 n. 2, 77 L.Ed.2d 694 (1983) (Brennan, J., dissenting); *Santosky v.*

---

12. While plaintiff's complaint alleges that Walter Kaszuk failed to elect coverage because of inadequate notice, it also asserts in the alternative that Mr. Kaszuk did in fact make an election, but his records were lost by the Fund due to inadequate record-keeping procedures. *See* Complaint, ¶ 12. The Fund has moved for summary judgment on this alternative argument, presenting evidence which shows that Mr. Kaszuk never filed an election and that the Fund's record-keeping procedures were satisfactory. Plaintiff has not submitted counter-evidence indicating that her alternative claim has any basis in fact. Indeed, plaintiff's own deposition testimony appears to demonstrate that her husband never did file any election which the Fund subsequently lost. *See* Deposition of Josephine Kaszuk, at 18–19:

MISS FRIEDMAN: Well, I am asking now specifically about an election to cover Josephine Kaszuk under the preretirement husband and wife pension.

MR. JACOBS: And the question is has she seen a form like that signed by him?

MISS FRIEDMAN: Yes.

A. No.

Q. Did you ever—did your husband ever tell you that he filled out a form like that?

A. No.

Q. Did your husband ever specifically tell you that he filled out any particular form for this pension plan?

A. No. If he did, he would tell me, but he didn't.

Because plaintiff has not managed to raise a fact question regarding whether her husband ever filed an election, or whether the Fund's record-keeping procedures were in any way inadequate, we grant the Fund's motion for summary judgment on these issues.

*Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); 9 Wigmore, *Evidence* § 2498, at 424–31 (Chadbourn Rev.1981); McCormick, *On Evidence* § 340 (2d ed. 1972).[1]

■ To characterize "clear and convincing" as a middle level standard of proof, however, is not to define it. We have stated before that "[c]lear and convincing evidence means evidence that compels [one's] belief and leaves little doubt that a particular proposition is true." *See MCI Communications v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1204 (7th Cir.), *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983). Upon reflection, we believe this definition may too closely approximate the "beyond a reasonable doubt" standard which we have just eschewed. "Clear and convincing" does not mean evidence which unequivocally proves a point, or dispels all reasonable doubt. *United States v. Mastrangelo*, 561 F.Supp. 1114, 1120 (E.D.N.Y.), *aff'd*, 722 F.2d 13 (2d Cir. 1983), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 343 (1984). To the extent that the phrase is susceptible of precise definition, we believe it is best described as evidence which produces in the mind of the trier of fact "an abiding conviction that the truth of [the] factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 104 S.Ct. 2433, 2438, 81 L.Ed.2d 247 (1984) (citation omitted). The "highly probable" formulation has been endorsed by several courts in the recent past, including the United States Supreme Court, and clearly appears to reflect the trend in judicial interpretation. *See, e.g., Colorado v. New Mexico, supra; Taylor v. Commissioner of Mental Health*, 481 A.2d 139, 153–54 (Me.1984); *Succession of Lyons*, 452 So.2d 1161, 1165 (La.1984); *People v. Taylor*, 618 P.2d 1127, 1136 (Colo.1980). *See also Estate of Ragen*, 79 Ill.App.3d 8, 34 Ill.Dec. 523, 528, 398 N.E.2d 198, 203 (1st Dist.1979). We adopt the "highly probable" standard, since it appears to provide an appropriate balance between "preponderance of the evidence" and "beyond a reasonable doubt."

Finally, both sides argue that they have produced sufficient evidence to establish entitlement to judgment as a matter of law. Inasmuch as we have set out what we consider to be the issues in the case, and have discussed the standard of proof we will apply in analyzing these issues, the case is thus ripe for summary judgment. Although each of the parties submitted a summary judgment motion and supporting briefs last year, we believe it appropriate to afford both plaintiff and the Fund an opportunity to file supplemental memoranda, since each side has recently filed with the court additional evidence which the other has not yet had a chance to respond to or rebut. *See, e.g.,* Verified Report of Plaintiff's Counsel; Supplemental Affidavit of John J. Fleming. Accordingly, if either party so desires, leave is given to file an additional brief by January 17, 1985; each may then have until January 25, 1985, to file a reply. (No extensions of this briefing schedule will be granted). Should we find the existence of fact questions which preclude summary judgment, we will reach the issue of plaintiff's right to a jury trial.[2]

## ON MOTIONS FOR SUMMARY JUDGMENT

In our first opinion in this case, we ruled that the defendant Fund breached its fidu-

---

**1.** Although several Illinois courts have ruled that "clear and convincing" means "beyond a reasonable doubt," *see, e.g., In Re Estate of Hutchins*, 120 Ill.App.3d 1084, 76 Ill.Dec. 556, 558, 458 N.E.2d 1356, 1358 (4th Dist.1984); *Interest of Jones*, 34 Ill.App.3d 603, 340 N.E.2d 269, 273 (1st Dist.1975), others have adopted the more widely accepted view that the standard lies between "beyond a reasonable doubt" and "by a preponderance of the evidence." *See, e.g. Drogos v. Village of Bensenville*, 100 Ill.App.3d 48, 55 Ill.Dec. 902, 907, 426 N.E.2d 1276, 1281 (2d Dist.1981); *Estate of Ragen*, 79 Ill.App.3d 8,

34 Ill.Dec. 523, 528, 398 N.E.2d 198, 203 (1st Dist.1979).

**2.** In their memoranda, the parties may also wish to summarize the material facts which they contend are not in dispute, or, if responding to the other side's motion, those facts as to which it is contended that there exists a genuine issue necessary to be litigated. Such summaries should be supported by specific references to affidavits, parts of the record, and other materials relied upon.

ciary duty to provide adequate notice of the availability of and procedures for electing the pre-retirement pension. Specifically, we held that the insertion of two somewhat confusing advertisements, fourteen months apart, in a union newspaper that was mailed out to union members, failed to constitute reasonable notice of the requirements surrounding a new and important pension package. *See* Memorandum Opinion of November 8, 1984. We stated, however, that this ruling was not dispositive of the case. Notwithstanding the generally inadequate notice, if Walter Kaszuk had actual notice of the procedures for electing the pension in question, or if he would not have elected the pension even had he received reasonable notice, his widow—the plaintiff in this case—could not recover. In our second opinion, we held that because it had breached the fiduciary duties it owed to its participants, the Fund, rather than plaintiff, must now bear the burden of proof on these questions. In other words, it is up to the Fund to prove by clear and convincing evidence that Walter Kaszuk actually had notice of the pre-retirement pension, or that he would not have elected coverage even if he had received notice. *See* Memorandum Opinion of January 3, 1985.

Both parties have moved for summary judgment. We have reviewed the motions, as supplemented by recent memoranda, and we now hold that plaintiff is entitled to summary judgment.

## DISCUSSION

■ The Fund believes that it is entitled to judgment as a matter of law on the question of whether Walter Kaszuk had

actual notice of the necessity of making an election for the pre-retirement pension. In support of its argument, the Fund submits the essentially undisputed evidence that plaintiff and her late husband regularly received and read the union newspaper in which the Fund placed the two advertisements mentioned above. The Fund has no other evidence which would suggest that Walter Kaszuk knew about the pre-retirement pension.

■ We do not believe defendant's evidence suffices to prove as a matter of law that it is "highly probable"[1] that Walter Kaszuk read or understood the two advertisements. *See* Memorandum Opinion of November 8, 1984, at 12 n. 10. Accordingly, the Fund has not demonstrated that it is entitled to judgment on the "actual notice" question.[2]

The undisputed evidence submitted by plaintiff, on the other hand, demonstrates that Walter Kaszuk did not have actual notice of the pre-retirement pension election procedures, and that if he had received clear notice he would have opted for coverage. As is set forth in the deposition of Josephine Kaszuk and in the affidavits of Ann Adamek and Theresa M. Kaszuk, Walter Kaszuk was very concerned for plaintiff's welfare, and did everything in his power to see that she would be protected in the event he should predecease her. Kaszuk named his wife the beneficiary under his will and his life insurance, and made her the joint owner of his savings account and of his house. Affidavit of Theresa Kaszuk, ¶ 4. More importantly, he told his wife and others that she was covered under his pension plan. *Id.* at ¶ 3; Affi-

1. In our January 3, 1985, Memorandum Opinion, we defined "clear and convincing" as "evidence which produces in the mind of the trier of fact 'an abiding conviction that the truth of [the] factual contentions [is] highly probable.'" (Citation omitted). *Id.* at 3.

2. The Fund argues that it should only be required to show that it provided "constructive notice" to Walter Kaszuk, and contends that the mailing of the two union newspapers satisfied the constructive notice requirement. We disagree. Because the Fund did not fulfill its fiduciary duty of generally providing reasonable

notice, it must prove that actual notice was received, in order to show that its breach of fiduciary duties did not cause the injury complained of. Had the Fund provided generally adequate notice, it would not be required to show actual notice; constructive notice would suffice. *See, e.g., Staats v. Ohio River Co.,* 570 F.Supp. 22, 25 (W.D.Pa.1983), *aff'd,* 735 F.2d 1351 (3d Cir.1981) (where failure of plaintiff to receive proper notice was no fault of defendant or its chosen means of delivery, constructive notice sufficed).

davit of Ann Adamek, ¶ 4. This circumstantial evidence indicates that Walter Kaszuk believed that he had done everything necessary to provide for his wife, and that he was laboring under a misapprehension that plaintiff was covered under the pension plan. This evidence also indicates that if Walter Kaszuk had been given clear notice that he had to elect coverage under the pre-retirement plan in order to ensure that his wife would be provided for should he die before retiring, he would have done so.[3]

In short, whereas the Fund has not managed to raise a material fact question as to whether Walter Kaszuk had actual notice—it has no evidence, direct or circumstantial, that he did read or understand the two ads, or that he learned about the pension from some independent source—plaintiff has submitted undisputed evidence, albeit circumstantial, that Walter Kaszuk did not have actual notice, and that he would have elected coverage had he received clear notice.[4] Accordingly, there simply is no triable issue of fact regarding whether Kaszuk had actual notice or would not have elected coverage had he been given notice, and plaintiff is entitled to judgment as a matter of law.

Plaintiff is directed to submit a draft judgment order. The order should not include an award of prejudgment interest, since the Fund has not yet had a chance to respond to plaintiff's request for such an award. Neither should the order provide for any sort of general injunctive relief; this is an individual action adjudicating only plaintiff's rights, and to the extent that the complaint seeks class-wide injunctive relief, we deny that relief.

Although there remain questions regarding plaintiff's entitlement to prejudgment interest and to statutory attorney's fees, we believe that the interests of the parties would be served by expediting an appeal on the liability issues, should the Fund desire to take one.[5] Accordingly, the draft judgment order should include a Fed.R.Civ.P. 54(b) finding that there is no just reason for delay, inasmuch as all liability questions have been decided, and the court cannot predict how long it will take to finally adjudicate the attorney's fees, costs and prejudgment interest. Moreover, the court has been informed that plaintiff is afflicted with serious, life-threatening health problems. This also militates in favor of an immediate appeal. Plaintiff should submit the draft judgment order by February 19, 1985. The Fund may comment on the draft by February 26, 1985. The Fund may also have until March 4, 1985, to respond to plaintiff's recent request for prejudgment interest.

---

3. In addition, plaintiff has submitted evidence which shows that when Fund beneficiaries did receive clear notice of the pre-retirement pension pursuant to a settlement between plaintiff and the union local, a large number of the beneficiaries quickly elected coverage. This tends to indicate that the earlier notices were either not read or not understood by those beneficiaries.

4. The only evidence submitted by the Fund which could be construed as showing that Kaszuk would not have elected coverage even if he had reasonable notice of the pre-retirement pension is a statistical statement that a majority of eligible participants did not in fact elect coverage. This general failure to elect coverage, however, may simply reflect what we have already held to have been generally inadequate notice by the Fund, rather than conscious decisions on the part of Fund participants to decline coverage. *See also* note 3, *supra*.

5. It is not necessary that we decide the attorney's fees question in order to satisfy the finality requirement of appellate jurisdiction. *See, e.g., Bittner v. Sadoff & Rudoy Industries,* 728 F.2d 820, 826–27 (7th Cir.1984) ("[An ERISA] judgment is not deprived of its finality by the fact that the district court has not yet acted on a party's claim for statutory attorney's fees.").