**Josephine KASZUK, Plaintiff-Appellee,**

v.

**BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND, Defendant-Appellant.**

**Nos. 85–1513, 85–2385.**

United States Court of Appeals, Seventh Circuit.

Argued June 10, 1985.

Decided May 23, 1986.

Rehearing Denied June 20, 1986.

Margery Sinder Friedman, Morgan, Lewis & Bockius, Washington, D.C., for plaintiff-appellee.

John G. Jacobs, Plotkin & Jacobs, Chicago, Ill., for defendant-appellant.

Before COFFEY and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.[*]

PER CURIAM.

Defendant-appellant challenges the district court's granting of summary judgment to plaintiff-appellee on her claim that defendant-appellant breached its fiduciary duty to inform plaintiff-appellee's deceased husband of the steps that he had to take to elect a pre-retirement husband-and-wife pension plan. Defendant-appellant also contests the district court's award of injunctive relief. We affirm in part and reverse in part.

### Facts

Plaintiff-appellee's husband, Walter Kaszuk, worked as a dough mixer for the National Biscuit Company (Nabisco), in Chicago. During twenty-one of his twenty-three years of employment at Nabisco, Mr. Kaszuk contributed to, and participated in, the defendant-appellant, the Bakery and Confectionery Union and Industry International Pension Fund [hereinafter referred to as the Fund]. Mr. Kaszuk had a tenth grade education and Mrs. Kaszuk had an eighth grade education. The Kaszuks fairly represent the typical Fund participants and beneficiaries.

Prior to 1976, the Fund, a labor-management trust fund established pursuant to § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5) and the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 [hereinafter referred to as ERISA], provided no pre-retirement pensions for the spouses of employees. In 1976, pursuant to Congressional mandate, see 29 U.S.C. §§ 1055, 1061(b), the Fund created a pre-retirement husband-and-wife pension. This pension provided benefits to an employee's spouse if the employee elected coverage before retiring. If an employee elected the pre-retirement husband-and-wife pension, the Fund reduced the employee's retirement benefit by an amount equal to .8% of the monthly benefit to which he was otherwise entitled multiplied by the number of years over which the option was elected. A participant's election did not become effective until two years after it was filed; however, the Fund waived the two-year waiting period for participants who died as the result of an accident after making their elections or who filed their elections by March 31, 1978. The new pension became available on June 1, 1976.

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

The Fund notified its participants of the pre-retirement husband-and-wife pension in the October 1976 issue of the *B & C News* which was the newspaper of the union to which Mr. Kaszuk and his co-workers belonged. The notice appeared as a one and one-half column advertisement on page seven of the eight page publication under the heading: "BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL PENSION FUND." The ad's caption read: "Important Notice, Husband and Wife Option." The text of the ad set forth, in varying degrees of clarity, the effective date of the new pension, the eligibility requirements, the charge for electing, the two-year waiting period, and a form to be used for electing or rejecting the option even though the participant could reject the option by doing nothing.

The Fund reran the ad fourteen months later in the November-December 1977 issue of the *B & C News*. The title of the ad in its second publishing read: "Important Notice, Husband and Wife (Spouse) Option." The ad also contained a misprint in the first paragraph. The misprint obscured certain eligibility requirements. This ad appeared on page seven of the twelve page newspaper. Page seven had a title which read: "Focus on Pensions and Health Benefits," and also contained examples, in addition to those in the October 1976 ad, which demonstrated how the option worked.

The Fund also informed its members about the availability of the pension option in its 1976 and 1977 "Rules and Regulations" booklets. The booklets contained all the rules of the Fund. Finally, in August 1978, the Fund distributed a "Summary Description Booklet" which notified Fund participants about the election procedures.[1] The Fund distributed all of these booklets by leaving them in stacks at various locations in the Nabisco plant.

Mr. Kaszuk suffered a major heart attack and died in August 1978. Shortly after his death, Mrs. Kaszuk filed an application for benefits with the Fund. The Fund denied Mrs. Kaszuk's application because Mr. Kaszuk had never elected the Fund's pre-retirement husband-and-wife option. After exhausting her intrafund appeal remedies, Mrs. Kaszuk filed this lawsuit.

Brought under 29 U.S.C. § 1132, Mrs. Kaszuk's complaint alleged that Mr. Kaszuk failed to elect the pre-retirement pension only because the Fund failed to notify him adequately of the pre-retirement husband-and-wife pension's election procedures, that the Fund's failure to provide adequate notice violated fiduciary obligations set forth in ERISA, 29 U.S.C. § 1104, and that Mr. Kaszuk would have made the necessary election if the Fund had met its obligation of adequately notifying him. Mrs. Kaszuk requested:

A. That the Court declare that defendants have violated applicable law in the respects alleged;

B. That the Court require defendants to pay to plaintiff until her death the pension she is entitled to as survivor of Walter Kaszuk;

C. That the Court require defendants to pay to plaintiff all back payments under the pension plan that have been denied to her as aforesaid;

D. That the Court award plaintiff her costs and attorneys' fees in connection with the bringing of this suit; and

E. That the Court award plaintiff such further or other relief as it shall deem appropriate.

Complaint at 5–6.

Mrs. Kaszuk originally joined Mr. Kaszuk's local union, Local 300, as a defendant in this lawsuit. The two entered into a settlement agreement on August 14, 1984. The settlement provided a small

---

**1.** Some question exists as to whether Mr. Kaszuk ever received the Summary Description Booklet. However, even if Mr. Kaszuk had received the Booklet and even if it had provided a clear explanation of the election procedures, Mr. Kaszuk would not have benefited from it. In order to have avoided the two-year waiting period for effecting his election, Mr. Kaszuk would have had to have made his election on March 1, 1978.

lump sum payment to Mrs. Kaszuk and called for the Union to post and mail a simple letter explaining the pre-retirement husband-and-wife pension to each of Local 300's members. Within the forty days following the mailing of the notice, approximately 270 of the Local's approximately 5,000 members elected the option. In the prior eight years, the Fund had received approximately 600 elections from its entire membership which numbered around 95,-000.

In November 1984, the district court granted Mrs. Kaszuk partial summary judgment holding that, as a matter of law, the Fund breached its fiduciary duty to notify Mr. Kaszuk of the election requirement. In a January 1985 Memorandum and Opinion, the district court placed upon the Fund the burden of proving whether Mr. Kaszuk received actual notice of the election requirement and whether Mr. Kaszuk would not have elected pre-retirement coverage if he had received notice. Finally, in a February 1985 decision, the district court granted Mrs. Kaszuk's request for summary judgment on the remaining portion of the liability issue. Pursuant to Rule 54(b), Federal Rules of Civil Procedure, the district court ordered that the liability issue was final for the purpose of appeal.

On January 17, 1985, before the district court had made its final ruling on the issue of liability, Mrs. Kaszuk filed Plaintiff's Supplemental Memorandum of January 17, 1985, In Support of Her Motion For Summary Judgment in which she raised questions regarding prejudgment interest, statutory attorney's fees, the date from which the Fund was liable, Mrs. Kaszuk's entitlement to an increase in the amount of the Fund's payments, and injunctive relief. While the Fund's appeal from the granting of summary judgment on the issue of liability was pending before this Court, the district court determined the remaining issues. The Fund has filed a second appeal contesting the district court's award of injunctive relief. We have consolidated the two appeals.

## Issues

This Court has four issues before it on appeal:

I. Whether this Court has jurisdiction to hear this appeal;

II. Whether the district court improperly determined that the Fund breached its fiduciary duty;

III. Whether the district court improperly determined that Mr. Kaszuk did not receive actual notice of the pension option and that Mr. Kaszuk would have elected the option if he had received notice; and,

IV. Whether the district court properly granted injunctive relief.

---

Issue I. *Whether this Court has jurisdiction to hear this appeal.*

■ Neither party raised the issue of jurisdiction in its briefs or arguments. Nevertheless, federal appellate courts do "not acquire subject matter jurisdiction by the consent of the parties, ... we have an independent obligation to police the constitutional and statutory limitations on our jurisdiction, ..." *Minority Police Officers Association of South Bend v. City of South Bend, Indiana,* 721 F.2d 197, 199 (7th Cir.1983) (citations omitted), and "an independent obligation to make sure we do not exceed it." *A/S Apothekernes Laboratorium For Specialpraeparater v. I.M.C. Chemical Group, Inc.,* 725 F.2d 1140 (7th Cir.1984). Consistent with these maxims, this Court raised the issue of jurisdiction at oral argument and the parties' counsels, who have a professional obligation to assist the Court in determining the question of jurisdiction, *Minority Police Officers Association,* 721 F.2d at 199, filed briefs on the matter.

Even though many questions remained between the parties, the district court, having granted summary judgment to Mrs. Kaszuk on the issue of liability, directed the entry of final judgment on the liability issue pursuant to Rule 54(b), Federal Rules

of Civil Procedure. The Fund appealed immediately, and, after oral argument, but prior to the issuance of this opinion, the district court ruled upon all remaining questions, reserving only the determination of costs and attorney's fees. The Fund appealed from part of that ruling and we have consolidated its new appeal, No. 85–2385, with the original appeal, No. 85–1513. In effect, the district court has rendered final judgment.

■ The district court's partial judgment, entered on March 10, 1985, under Rule 54(b), held that Mrs. Kaszuk is entitled to benefits but did not dispose of her request for pre-judgment interest. It therefore did not finally adjudicate her entitlement to damages. A decision that fixes liability but not damages is not appealable, despite the entry of an order under Rule 54(b). *Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976). There is no material difference between an order that leaves all damages issues open (as in *Liberty Mutual*) and an order that leaves one, important damages issue open (this case). In either event the order is not a final disposition of a claim and does not meet the standards of Rule 54(b).

Because the initial judgment was not final, the first (and only) final judgment was entered on August 2, 1985. The judgment of August 2 disposed of the request for prejudgment interest. It also restated and increased the amount of back pension benefits due Mrs. Kaszuk, ordered the Fund to pay future benefits, and directed the Fund to notify other potential claimants. This judgment is the subject of appeal No. 85–2385, which gives us jurisdiction to hear the entire case. "Until the district court enters judgment on a 'separate document' within the meaning of Fed.R.Civ.P. 58, a party is free to accumulate issues. An appeal from the Rule 58 'separate document' at the end of the case brings up the whole case, even if the document was entered long after the opinion or order disposing of the issues the party now seeks to raise on appeal." *Exchange National*

*Bank v. Daniels*, 763 F.2d 286, 290 (7th Cir.), reheard in part on other grounds, 768 F.2d 140 (1985).

Appeal No. 85–2385 thus enables us to hear every issue properly preserved in the district court. Because the whole case is before us on appeal No. 85–2385, we dismiss No. 85–1513 as redundant. We need not decide when, if ever, the entry of a final judgment will revive a notice of appeal that is ineffectual because premature, as No. 85–1513 was premature. Compare *Stevens v. Turner*, 222 F.2d 352 (7th Cir. 1955), with *Sandidge v. Salen Offshore Drilling Co.*, 764 F.2d 252, 255 (5th Cir. 1985). It would be necessary to decide this issue only if there had been no timely appeal from the final judgment. Appeal No. 85–2385 is timely, making it inappropriate to decide this additional question.

Issue II. *Whether the district court improperly determined that the Fund breached its fiduciary duty.*

■ The district court found that the Fund, as a matter of law, breached its fiduciary obligation, set forth in 26 C.F.R. § 1.401(a)–11 (1978), to provide adequate notice regarding the pre-retirement husband-and-wife pension plan. Accordingly, the district court granted partial summary judgment to Mrs. Kaszuk.

In reviewing a summary judgment, an appellate court must view the entire record and the inferences drawn therefrom in the light most favorable to the party opposing the motion. If a study of the record reveals that inferences contrary to those drawn by the trial court might be permissible, then the summary judgment should be reversed.

*Pfeil v. Rogers*, 757 F.2d 850, 863 (7th Cir.1985) (quoting *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985) (citations omitted)).

The record reveals that, in its reply to Mrs. Kaszuk's opposition to the Fund's Motion for Summary Judgment, the Fund asserted that it met the requirements of 26 C.F.R. § 1.401(a)–11 and that, until January 1, 1978, it was entitled to rely upon the notification procedures set forth in a group

of rules known as the ERISA Guidelines. *See* Defendant's Reply to Plaintiff's Memorandum in Opposition to the Fund's Motion for Summary Judgment at 6. The Fund's Motion for Summary Judgment and its Opposition to Plaintiff's Motion for Partial Summary Judgment do not invoke the ERISA Guidelines' notification procedures. The district court did not address the applicability of the ERISA Guidelines, but rested its granting of summary judgment to Mrs. Kaszuk and denying of summary judgment to the Fund on its belief that the Fund had failed to meet the notification requirements of 26 C.F.R. § 1.401(a)–11. Because the Fund raised the question of the applicability of the notification procedures contained in the ERISA Guidelines below, and because the Fund has addressed this question at some length in this Court, we now examine it.

In 1974, ERISA made substantial changes in the qualification requirements for employee pension plans under 26 U.S.C. §§ 401(a), 403(a), and 405(a). On November 5, 1975, the Internal Revenue Service [hereinafter referred to as IRS] and the Department of Labor [herinafter referred to as DOL] issued a compendium of rules and regulations (the ERISA Guidelines) "[i]n recognition of the need to provide an immediate and complete set of interim guidelines to facilitate (1) adoption of new employee plans, and (2) prompt amendment of existing employee plans, in conformance with the requirements of the Code as amended by ERISA, ....." Rev.Pro. 76–31, 1976–2 C.B. 649. Plans adopted or amended to meet the new ERISA qualification requirements could rely on the ERISA Guidelines until December 31, 1977. *Id.* at 651. However, in unusual circumstances, the IRS and the DOL reserved the right to issue rules and regulations amending or supplementing the ERISA Guidelines prior to December 31, 1977. These rules or reg-

ulations would apply to pension plans no sooner than thirty days after their publication. *Id.*

The ERISA Guidelines included temporary regulations, Treas.Reg. 11.401(a)–11, applicable to joint and survivor annuities, T.D. 7379, 1975–2 C.B. 131. The temporary regulations required pension plans to notify their members about pre-retirement husband-and-wife annuities in the following manner:

> (iii) *Information to be provided by plan administrator.* (A) The plan administrator must furnish to the participant a written notification in nontechnical terms of the availability of the election provided by this subparagraph, within a reasonable amount of time after the first day of the election period. This notification shall also inform the participant of the availability of the information specified in subdivision (iii)(B) of this subparagraph.

Treas.Reg. 11.401(a)–11(d)(3)(iii). Subdivision (iii)(B) requires a plan administrator to supply additional information to a participant who requests it.

■ Permanent regulations appeared in the Federal Register on January 7, 1977. T.D. 7458, 42 Fed.Reg. 1463 (Jan. 7, 1977).[2] The introductory remarks accompanying the permanent regulations state that "[t]hese regulations supersede temporary regulations § 11.401(a)–11 ..." and that they "are adopted and inserted immediately after § 401–14." *Id.* at 1464. The explicitness of this language indicates the IRS's intention to have the permanent regulations be effective immediately. We therefore disagree with the court in *United Paper Workers International Union v. Pension Plan For Bowater Southern Paper Corp.,* which held that Treas.Reg. § 11.-

2. The IRS proposed the permanent regulations on October 3, 1975. Qualified Joint and Survivor Annuities, Proposed Rulemaking. The IRS held public hearings on February 26, 1976, and issued the permanent regulations on January 7, 1977. An October 4, 1977 amendment "affect[ed] some qualified plans which provide benefits by distributing individual annuity con-

tracts to participants and postpone[d] from July 1, 1977 to January 1, 1978, the date by which some participants must be given an opportunity to have amendments made to their contracts." 42 Fed.Reg. 53,956. Because the Fund does not distribute individual annuity contracts, neither special effective date affected it.

401(a)–11 governed until January 1, 1978. 2 Employee Benefits Cases (BNA) 1154, 1160 (E.D.Tenn.1981). However, we will consider whether the Fund met the notice requirements set forth in the ERISA Guidelines before February 6, 1977 because the permanent regulations did not become effective until that date. Between June 1, 1976, the effective date of the pre-retirement husband-and-wife pension, and February 6, 1977, the Fund provided Mr. Kaszuk notice by stacking booklets containing all the Fund's rules and regulations at various locations in the Nabisco plant and by placing a one and one-half page advertisement on the next to the last page of the October 1976 *B & C News.*

"The entire statutory scheme of ERISA demonstrates Congress' overriding concern with the protection of plan beneficiaries, and we would be reluctant to construe narrowly any protective provisions of the Act." *Leigh v. Engle,* 727 F.2d 113, 126 (7th Cir.1984); *see also* S.Rep. No. 127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad.News 4838, 4854. Both the Senate and the House Reports accompanying the bill state that

> [a]n important issue relates to the effectiveness of communication of plan contents to employees. Descriptions of plans furnished to employees should be presented in a manner that an average and reasonable worker participant can understand intelligently. It is grossly unfair to hold an employee accountable for acts which disqualify him from benefits, if he had no knowledge of these acts, or if these conditions were stated in a misleading or incomprehensible manner in plan booklets.

**3.** The record does not indicate whether Mr. Kaszuk obtained or read the 1976 Rules and Regulations Booklet.

**4.** The Fund's trust agreement required the Fund's Trustees to notify its participants of the Fund's terms and conditions by distributing explanatory booklets. When the Trustees adopted an amendment subsequent to the distribution of the booklets, the Trustees had to place an explanation of the amendment "in the official month-

*Id.* at 4847; H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4646. In view of the general purpose of disclosure to plan participants of their rights under their employee plans, this Court finds that neither notice of the availability of the election for pre-retirement spousal coverage under the Fund was adequate. First, the mere stacking of booklets at the employee's workplace does not ensure that the employee will discover the booklets or retain one for his personal use.[3] Furthermore, placing the rules governing the pre-retirement husband-and-wife pension in a booklet with all the rules and regulations of the Fund does not constitute "a written notification in nontechnical terms of the availability" of the pension as required by 26 C.F.R. § 11.401(a)–11. Second, the October 1976 notice in the *B & C News* did not come "within a reasonable amount of time after the first day of the election period," as required by 26 C.F.R. § 11.401(a)–11.[4] The *Bowater* court reached the same conclusion. 2 Employee Benefits Cases (BNA) at 1162. The Fund's October notice simply failed to meet the "within a reasonable amount of time" requirement of the ERISA Guidelines.

We next examine whether the Fund met the notice requirements contained in the permanent regulations found at 26 C.F.R. § 1.401(a)–11(c)(3) which provide in pertinent part:

> (3) *Information to be provided by plan administrator.* (i) A plan which is required to provide either or both of the elections described in paragraph (c)(1) or (2) of this section must provide to the participants, at the time and in the manner specified in subdivision (ii) of this

ly publication of the Bakery, Confectionery & Tobacco Workers International Union in the issue next following the date of their adoption." Bakery and Confectionery Union and Industry International Pension Fund, Agreement and Declaration of Trust, Art. VI, § 5(b) (May 31, 1981), Exhibits to Memorandum of Defendant Local 300 In Support of Motion For Summary Judgment. Therefore, the Fund also failed to give the notice required by its trust agreement.

subparagraph, the following information, as applicable to the plan, in written nontechnical language:

\* \* \* \* \* \*

(B) In the case of the election described in paragraph (c)(2) of this section, a general description of the early survivor annuity, the circumstances under which it will be paid if elected, and the availability of such election; and

(C) A general explanation of the relative financial effect on a participant's annuity of either or both elections, as the case may be.

\* \* \* \* \* \*

(ii) The method or methods used to provide the information described in subdivision (i) of this subparagraph may vary. See § 1.7476–2(c)(1) for examples of methods which can be used. One or more methods may be used to provide the required information provided that all of the required information is provided by one method or a combination of methods by or within the time period specified in this subdivision (ii).... If a method other than mail or personal delivery is used to provide participants with some or all of such information, if (sic) must be a method which is reasonably calculated to reach the attention of a participant on or about the date prescribed in the immediately preceding sentence and to continue to reach the attention of such participant during the election period applicable to him for which the information is being provide (sic) (as, for example, by permanent posting, repeated publication, etc.).

26 C.F.R. § 1.7476–2(c)(1) provides in pertinent part: "... notice shall be given in person, by mailing, by posting, or by printing it in a publication of ... an employee organization which is distributed in such a manner so as to be reasonably available to such employee."

In an effort to inform its participants about the new pre-retirement husband-and-wife pension, the Fund placed two advertisements in the newspaper of its participants' union, one in October 1976 and the

other in November-December 1977, some fourteen months apart. The Fund also left, at various locations in the Nabisco plant, stacks of its 1976 and 1977 "Rules and Regulations" booklet, and, in August 1978, its "Summary Description Booklet," all of which contained descriptions of the pre-retirement husband-and-wife pensions and the relevant election procedure.

The Fund attempts to stretch the meaning of "mailing" in 26 C.F.R. § 1.7476–2(c)(1) to include its advertisements in the *B & C News* which were mailed to the homes of its participants. However, we agree with the district court that "notice ... by mailing....", *id.*, means the mailing of individual notices rather than placing an advertisement in a publication that is mailed. If the Fund's construction of the term "mailing" is accurate, the IRS would have had no reason to include "notice ... by printing it in a publication of ... an employee organization which is distributed ...," *id.*, in the regulation as an alternate method of giving notice.

Further, the Fund's two advertisements in the *B & C News* did not constitute a method of notification "which is reasonably calculated to reach the attention of a participant ..." throughout the election period. 26 C.F.R. § 1.401(a)–11(c)(3)(ii). While 26 C.F.R. § 1.7476–2(c)(1) lists printing in a publication of an employee organization as an acceptable means of notice, 26 C.F.R. § 1.401(a)–11(c)(3)(ii) suggests that repeated publication is necessary to reach plan participants throughout their election periods. Two notifications, some fourteen months apart, during the twenty-two month period in which Mr. Kaszuk could have elected the pre-retirement pension and avoid the two-year waiting period, fail to qualify as a method of notice reasonably calculated to reach the attention of plan participants *throughout* the election period.

Finally, the Fund's stacking of its "Rules and Regulations" booklets at various locations in the Nabisco plant in 1976 and 1977, and its "Summary Description Booklet" in

1978, does not constitute an acceptable method of providing notification to plan participants. In reaching this conclusion, we look for direction to "[t]he general disclosure requirements set forth at 29 C.F.R. § 2520.104(b)–1 [which] provide guidelines for proper distribution of materials." *Staats v. Ohio River Company*, 570 F.Supp. 22, 24 (W.D.Pa.1983), *aff'd*, 735 F.2d 1351 (3d Cir.1984). Those general disclosure requirements state that, "in no case is it acceptable merely to place copies of the material in a location frequented by participants." 29 C.F.R. § 2520.104b–1(b). While this prohibition appears in a labor regulation directed at Part 1 of ERISA, rather than Part 2 under which the instant case arises, it does reflect the general purposes of disclosure to, and effective communication with, plan participants contained throughout ERISA. *See* S.Rep. No. 127, *supra* p. 12, H.R.Rep. No. 533, *supra* p. 13. We therefore find the Fund's distribution of the various rules booklets to be an inadequate form of notice of the pre-retirement husband-and-wife pension. In sum, we agree with the district court: "the Fund failed in every way to comply with the regulation it allegedly relied on." *Kaszuk v. Bakery and Confectionery Union*, 638 F.Supp. 365, 370 (N.D.Ill.1984) (Memorandum and Order granting partial summary judgment to plaintiff).

Issue III. *Whether the district court improperly determined that Mr. Kaszuk did not receive actual notice of the pension option and that Mr. Kaszuk would have elected the option if he had received notice.*

■ Having found the notices given by the Fund to be inadequate, the district court reasoned that

it may be that Mr. Kaszuk in fact had actual notice of the pre-retirement program and its procedures, and simply chose not to elect coverage. Perhaps, for example, he read and understood the notices in the *B & C News*, confusing though they may have been, or learned about the program from some other source. If Mr. Kaszuk did have actual notice, but simply chose to sleep on his rights or to not elect coverage, then common sense dictates that plaintiff's claim must fail.

Moreover, there still remains a question of causality. It is possible that even had Walter Kaszuk received timely and effective notice of his rights under the pre-retirement plan, he would have declined to elect coverage.

*Id.* at 8 (footnote omitted). The district court placed the burden of proof for these two questions upon the Fund and the Fund does not contest this. After the parties briefed the matter, the district court held that the Fund failed to raise a material issue of fact as to the questions; and, accordingly, the district court granted summary judgment in favor of Mrs. Kaszuk.

■ The Fund has consistently contended that the notice provided to Mr. Kaszuk in the *B & C News* and in the rules booklets constituted actual notice of the availability of the pre-retirement husband-and-wife pension. This argument failed to convince the district court, and it fails to convince this Court. The Fund may not rely upon methods of notification found to be inadequate under ERISA to show that a participant received actual notice. In passing ERISA, Congress intended to establish minimum standards of fiduciary conduct for all private pension plans. H.R.Rep. No. 533, *supra* p. 13, *reprinted in* 1974 U.S. Code Cong. & Ad.News at 4648, 4655. By allowing the Fund to prove actual notice through the use of methods found to be inadequate under ERISA, this Court would be allowing the Fund to use methods below the minimum standard established by the Act. This we will not do.

■ Mrs. Kaszuk, on the other hand, submitted a deposition and affidavits in support of her position that Mr. Kaszuk had thought that she was covered under the pension plan and that, if Mr. Kaszuk had been given proper notice, he would have elected the pre-retirement pension.

The district court summarized the deposition and affidavits as follows:

> ... Walter Kaszuk was very concerned for plaintiff's welfare, and did everything in his power to see that she would be protected in the event he should predecease her. Kaszuk named his wife the beneficiary under his will and his life insurance, and made her the joint owner of his savings account and of his house.... More importantly, he told his wife and others that she was covered under his pension plan.

*Kaszuk,* No. 83 C 1177, slip op. at 3 (N.D. Ill. Feb. 11, 1985) (citation omitted) (memorandum opinion granting summary judgment to plaintiff on the issues of actual notice and Mr. Kaszuk's election in the event of notice). The Fund did not contest this evidence.

Summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). According to the Supreme Court, the party seeking summary judgment bears the burden of persuading the court that no issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 ... [90 S.Ct. 1598, 1608, 26 L.Ed.2d 142] (1970); *United States v. Diebold, Inc.,* 369 U.S. 654, 655 [82 S.Ct. 993, 994, 8 L.Ed.2d 176] ... (1962) (per curiam). *See Herman v. National Broadcasting Co.,* 744 F.2d 604, 607 (7th Cir.1984). In determining whether an issue of material fact exists, the court must construe the facts alleged in the light most favorable to the party opposing the motion for summary judgment. *Id. See Trulson v. Trane Co.,* 738 F.2d 770, 771 (7th Cir. 1984).

*Janowiak v. Corporate City of South Bend,* 750 F.2d 557, 559 (7th Cir.1984), *petition for cert. filed,* 53 U.S.L.W. 3896 (U.S. June 25, 1985) (No. 84–1936). The non-moving party receives the benefit of all inferences that may reasonably be drawn in his favor. *Hermes v. Hein,* 742 F.2d 350, 353 (7th Cir.1984). A moving party may file affidavits in support of his motion for summary judgment and shift to the non-moving party the burden of showing that an issue of material fact exists. *Bowers v. DeVito,* 686 F.2d 616, 617 (7th Cir. 1982) (citing *Faulkner v. Baldwin Piano & Organ Co.,* 561 F.2d 677, 683 (7th Cir. 1977), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978)); Fed.R.Civ.P. 56(c). While the non-moving party may not avoid summary judgment by baldly asserting the existence of a disputed question of fact, *Atchison, Topeka and Santa Fe Railway Company v. United Transportation Union,* 734 F.2d 317, 320 (7th Cir.1984) (citations omitted), the Federal Rules do not require him to submit any evidence in opposition to a motion for summary judgment. Failure to submit such evidence "leads only to the court's acceptance as true of the facts set forth in the [movant's] affidavits...." *Wang v. Lake Maxinhall Estates, Inc.,* 531 F.2d 832, 835 n. 10 (7th Cir.1976) (citations omitted). The court has no obligation to comb the record for evidence contradicting the movant's affidavits. *Lawson v. Sheriff of Tippecanoe County, Indiana,* 725 F.2d 1136, 1139 (7th Cir.1984).

In the instant case, Mrs. Kaszuk's affidavits and deposition indicate that Mr. Kaszuk thought that he had provided for Mrs. Kaszuk in the event of his death before retirement, and that he would have elected the pre-retirement husband-and-wife pension if the Fund had given him proper notice. In the absence of any opposing evidence from the Fund, the district court properly granted summary judgment to Mrs. Kaszuk on the questions of actual notice and of Mr. Kaszuk's election if properly notified.

Issue IV. *Whether the district court properly granted injunctive relief.*

 When the Fund filed its original notice of appeal, many matters remained before the district court. At best, the Fund had appealed an interlocutory order pursuant to 28 U.S.C. § 1292; at worst, the Fund had appealed a nonappealable order. In either case, the district court retained juris-

diction to grant the injunctive relief. *See Taylor v. Sterrett,* 640 F.2d 663, 668 (5th Cir.1981) (citing 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* § 203.11 at 3–54 (2d ed. 1980)) ("where an appeal is allowed from an interlocutory order, the district court may still proceed with matters not involved in the appeal."); *Patzer v. Board of Regents of the University of Wisconsin System,* 763 F.2d 851, 859 (7th Cir.1985) (citation omitted) (district court not divested of jurisdiction "when there is a purported appeal from a non-appealable order.").

In her complaint, Mrs. Kaszuk requested declaratory relief, prospective and back payments under the pension plan, costs and attorney's fees, and "such further relief or other relief as [the court] shall deem appropriate." Complaint at 5–6. Mrs. Kaszuk filed the first pleading mentioning injunctive relief one year and eleven months after the filing of the complaint. Plaintiff's Supplemental Memorandum of January 17, 1985, In Support of Her Motion For Summary Judgment at 15. Mrs. Kaszuk did not place the question of injunctive relief into issue by amending the pleadings pursuant to Rule 15(a), Federal Rules of Civil Procedure. Her reference to injunctive relief came late in the proceedings; indeed, the district court had issued two substantive orders and had dismissed Local 300 from the case.

▮ Failure to amend the pleadings under Rule 15 does not fatally flaw a request for relief made late in a judicial proceeding. *Southwestern Investment Company v. Cactus Motor Company, Inc.,* 355 F.2d 674, 678 (10th Cir.1966) (citations omitted). Rule 54(c) provides, in pertinent part, that "[e]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Rule 15(b) provides that failure to amend the pleadings to request relief not previously demanded does not affect the granting of such relief.

▮ Rule 54(c) "'has been liberally construed, leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved.'" *United States v. Marin,* 651 F.2d 24, 31 (1st Cir.1981) (quoting *Robinson v. Lorillard Corporation,* 444 F.2d 791, 802–03 (4th Cir.), *cert. dismissed,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971)) (citing *Columbia Nastri & Carta Carbone v. Columbia Ribbon & Carbon Manufacturing Co.,* 367 F.2d 308, 312 (2d Cir.1966)). This includes injunctive relief when appropriate, *see Kahan v. Rosenstiel,* 424 F.2d 161, 174 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970), and even when not specifically requested. *Fast v. School District of City of Ladue,* 728 F.2d 1030, 1033 (8th Cir.1984); *Morrow v. South,* 540 F.Supp. 1104, 1111 (S.D.Ohio 1982). A district court's duty to grant "whatever relief is appropriate" does have some limitations. When such relief would prejudice the opposing party, the district court ought not grant it. *Albemarble Paper Co. v. Moody,* 422 U.S. 405, 424, 95 S.Ct. 2362, 2374, 45 L.Ed.2d 280 (1975); *Engel v. Teleprompter Corporation,* 732 F.2d 1238, 1242 (5th Cir.1984); *Atlantic Purchasers, Inc. v. Aircraft Sales, Inc.,* 705 F.2d 712, 716 (4th Cir.), *cert. denied,* 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983). "In particular, a substantial increase in the defendant's potential ultimate liability can constitute specific prejudice barring additional relief under Rule 54(c)." *Atlantic Purchasers, Inc.,* 705 F.2d at 716–17 (citations omitted).

> But the standard of review will be the familiar one of whether the District Court was "clearly erroneous" in its factual findings and whether it "abused" its traditional discretion to locate "a just result" in light of the circumstances peculiar to the case, *Langnes v. Green,* 282 U.S. 531, 541 [51 S.Ct. 243, 247, 75 L.Ed. 520] (1931).

*Albemarble Paper Co.,* 422 U.S. at 424–25, 95 S.Ct. at 2374–75.

▮ This Court has reviewed the district court's opinion granting injunctive re-

lief as well as the parties' briefs contesting and supporting that relief. While sending notification of this lawsuit to all Plan beneficiaries similarly situated to Mrs. Kaszuk will substantially increase the Fund's ultimate potential liability, this alone does not persuade us that those beneficiaries ought not receive notice. The instant case turned upon whether the Fund provided adequate notice regarding the pre-retirement husband-and-wife pension. The district court examined the various means by which the Fund attempted to provide notice and concluded that the notice was inadequate under the terms of ERISA. We have agreed. *See* Issue II, *supra* at pp. 553–57. The Fund could have done nothing more to show that its method of notice met the requirement of ERISA. If the Fund provided inadequate notice to one beneficiary, it provided inadequate notice to all. Therefore, the district court properly considered this late request for injunctive relief.

Under ERISA, "[a] civil action may be brought ... by a participant, beneficiary, or fiduciary ... to obtain other appropriate equitable relief ... to enforce any provision of this subchapter [subchapter I—Protection of Employee Benefit Rights] or the terms of the plan...." 29 U.S.C. § 1132(a)(3)(B)(ii). As a beneficiary of the Fund, Mrs. Kaszuk may properly bring this action to enforce the notice requirements of ERISA. We turn to the only remaining question: Whether this is appropriate equitable relief.

Congress declared that the policy of ERISA is "to protect ... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto...." 29 U.S.C. § 1001(b). In cases such as this, "where the district court is affirmatively charged with effectuating the purposes of a remedial statute, its discretion in fashioning an appropriate remedy runs wide." *N. Hess' Sons, Inc. v. Hess Apparel, Inc.*, 738 F.2d 1412, 1414 (4th Cir.1984) (citations omitted) (action under the Lanham Act). We may review the district court's fashioning of its

remedy only for an abuse of discretion in light of the circumstances of this case. *Prohosky v. Prudential Insurance Company of America*, 767 F.2d 387, 391 (7th Cir.1985).

The district court's injunction requires the Fund to send a letter, informing the recipient about the determinations in the instant case, to

the family of each Fund participant who: (a) died during the period June 1, 1976, through August 23, 1984; (b) at the time of death was 55 years of age or over and was eligible for a pension; (c) at the time of death was in covered employment and had not gone on retirement; and (d) had not elected Pre-Retirement Husband-And-Wife coverage.

*Kaszuk*, No. 83 C 1177, slip op. at 2 (N.D. Ill. Aug. 2, 1985) (Order specifying injunctive relief). The district court directed that the required letter inform recipients that they could contact either the Fund or Mrs. Kaszuk's attorneys for further information. *See id.* at App.A. A review of the evidence indicates that the district court has awarded injunctive relief which is broader than that allowed by the circumstances of the case.

First, the evidence in the instant case covers the period from June 1, 1976, the date the pre-retirement husband-and-wife pension became available, to August 1978, the month of Mr. Kaszuk's death. Neither party has proffered the Fund's efforts to notify its participants of the pension outside of this period. Therefore, only the families of participants who died within this period ought to receive information regarding the instant lawsuit.

Second, only spouses who survived a participant and who were married to that participant for at least one year prior to the participant's death qualified for the pension. Therefore, the injunction ought to be tailored to exclude individuals outside of this group.

Finally, nothing indicates that the Fund acted in bad faith in attempting to give notice about this benefit or in litigating this

lawsuit. We therefore fail to see the necessity of including the address and phone number of Mrs. Kaszuk's counsel in the notice. The Fund appears to be the appropriate party to communicate with its potential claimants and the district court has not stated that the Fund will not do so in good faith compliance with the determinations in this case.

In sum, we find that the district court properly awarded injunctive relief. However, we return this case to that court so that the injunctive relief may be narrowed to appropriately reflect the facts and circumstances of this case.

### Conclusion

The decision of the district court in Appeal No. 85–1513 is DISMISSED. We REMAND Appeal No. 85–2385 for the entry of an order consistent with this opinion.