Jesus Sergio RAMIREZ, personal representative and administrator of the estate of the deceased Omar Ramirez, Yolanda Sanchez, as guardian and next of kin for Christina Ramirez, a minor child of the deceased, and Maria Eva Ramirez, as legal guardian for Omar H. Ramirez, Jasmine D. Ramirez, and Adrian A. Ramirez, the minor children of the deceased, Plaintiffs,

v.

CITY OF CHICAGO, Chicago Police Officers Albert Krueger, No. 14394, Rita Vail, No. 19178, Edward Bansley, No. 12102, Felix Tomalis, Jr., No. 8484, Kevin Koszala, No. 12998, and James Wendlandt, No. 13686, Chicago Fire Department Paramedics Gabriel Leon, No. 1547, Victoria Janozik, No. 16917, and Cren, Np. 21, Defendants.

No. 99 C 4041.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 23, 1999.

838

Jeffrey H. Haas, Joey L. Mogul, People's Law Offices, Chicago, IL, for Plaintiffs.

Jeffrey Neil Given, George John Yamin, Jr., Mara Stacy Georges, Thomas R. Samson, Michael Patrick Monahan, Michael P. Sheehan, Alec McAusland, City of Chicago, Law Department Corporation Counsel, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Omar Ramirez, a 32 year old Latino man, died of asphyxiation after being handcuffed behind his back by Chicago police officers, thrown face down on the street, beaten, and refused care by Chicago Fire Department paramedics. The plaintiffs sued on his behalf for violation of his constitutional civil rights under 42 U.S.C. § 1983 and Illinois law, alleging that: (1) the police officers present, in their individual capacities, caused his death, failed to protect him, and failed to provide medical attention, (2) Chicago Fire Department paramedics Leon, Janozik, and Cren failed to provide medical attention, (3) the officers and paramedics conspired to deprive Mr. Ramirez of his constitutional civil rights, and (4) these violations of Mr. Ramirez's rights occurred under a pattern or practice of the City of Chicago that leads to such violations. In addition, the plaintiffs allege some state

1. Paramedic Cren did not join this motion.

law causes of action. The officers move to dismiss the individual capacity claims, and paramedics Janozik and Leon (the "paramedics"[1]) move to dismiss the claims against them. I deny the officer's motions in part and grant them in part, and I deny the paramedics' motion.

### I.

On June 20, 1988, when Omar Ramirez visited a friend on Archer Street in Chicago, he appeared paranoid and nervous. He was sweating profusely, paced the floor, and said people were trying to kill him. He had used alcohol and cocaine that evening and had been doing cocaine for two days. He kicked out a window screen and jumped two stories to the ground, fracturing a heel. He limped across the street to a bar, where several patrons observed his dilated pupils, and repeated his claims that people were trying to do him harm. The bartender called the police, informing them she thought he was on drugs and acting insane. A fight broke out that involved Mr. Ramirez, the bartender, and several patrons.

Shortly thereafter Officers Krueger and Vail arrived. They seized Mr. Ramirez and handcuffed him behind the back, then dragged him outside. He was screaming that his leg was broken. They dropped him face down in the street while cuffed, restricting his breathing, hit him twice in the head with nightsticks, stepped on his injured leg, pulled his hair, kneed him in the back, and allowed a tavern patron to step on his legs as he screamed in pain. Sometime during this process, the officers called for Chicago Fire Department paramedics. Paramedics Leon and Janozik were dispatched, but when they arrived, they refused to treat Mr. Ramirez or transport him in their ambulance to a hospital with a trauma center. Witnesses told the officers and paramedics about Mr. Ramirez's drug and alcohol use.

The officers then put Mr. Ramirez face down on his belly, still cuffed behind his back, in a squadrol, an automobile that is used by police as both a squad car and an ambulance. He was left unsupervised in this position while he was transported to St. Anthony De Padua Hospital in Chicago, which has no trauma center. The officers did not clear his air passage or make sure that he was still breathing. Upon arrival, they put him in a wheelchair, still handcuffed, and rolled him into the emergency room. A physician noted that he appeared to be dead. Resuscitation efforts failed, and he was pronounced dead sixteen minutes after arrival. An autopsy determined that the cause of death was asphyxiation from being handcuffed while intoxicated on alcohol and cocaine. Mr. Ramirez was survived by four minor children and his parents.

## II.

I begin by addressing paramedics Janozik's and Leon's motion to dismiss. In deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P 12(b)(6) the only question is whether the complaint raised allegations that, if proven, would entitle the plaintiff to relief. *See Int'l Marketing, Ltd. v. Archer–Daniels–Midland Co., Inc.,* 192 F.3d 724, 729 (7th Cir. 1999) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). On a motion to dismiss, I read a complaint liberally and "accept as true the well-pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations." *Sapperstein v. Hager,* 188 F.3d 852, 855 (7th Cir.1999) (internal citations omitted).

### A.

■ Without offering any explanation for their behavior towards Mr. Ramirez, paramedics Janozik and Leon argue first, with respect to the § 1983 claims, that they had no responsibility to provide him with medical care because they did not have him in their custody. Mr. Ramirez's § 1983 claims implicate the Fourteenth

Amendment due process clause, which requires state action. The paramedics cite *DeShaney v. Winnebago Dep't of Social Services,* 489 U.S. 189, 199–202, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), for the proposition that there is no federal constitutional duty of care where the plaintiff is not in custody or control of the state actor. The paramedics argue that because Mr. Ramirez was not in *their* custody but that of the Chicago Police Department, they did not "suddenly acquire a duty to treat a man who was not in their custody," an argument of breathtaking cynicism.

I agree with the plaintiffs, however, that the paramedics, public employees who were dispatched specifically to aid Mr. Ramirez, "suddenly acquired" a constitutional obligation to aid him when the police defendants, also public employees, took him into custody on behalf of the City of Chicago, and he was injured in the process. Chicago Fire Department paramedics have a duty to aid persons who are injured while in custody of the Chicago Police, or indeed, the Cook County Sheriff or the Illinois State Police. State action cannot be diluted by being dispersed over several departments.

The paramedics' argument makes no sense because the Police Department is the agency designated by the state to take persons into custody, while the Fire Department is designated with the responsibility, among other things, to provide medical care for persons in need. On the paramedics' argument, Chicago Fire Department employees can never have any constitutional duty to provide anyone in police custody with medical care. But the Supreme Court has said that due process "require[s] the responsible government or governmental agency to provide medical care to persons ... who have been injured while being apprehended by the police." *City of Revere v. Mass. Gen'l Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605(1985). The Fire Department and the employees tapped for the job therefore had a constitutional duty to provide Mr.

Ramirez with medical care while in police custody.

Further, the paramedics' argument contradicts the Seventh Circuit's reading of *DeShaney* in a similar set of facts. The panel there rejected a closely analogous no-duty claim, saying:

> Although the state has no general constitutional duty to provide rescue services, the government may not cut off all sources of private aid or self-help, and then decline to provide replacement services. If [the plaintiff] was in custody from the time the paramedics arrived—that is, if he was not free to seek other forms of assistance—then the paramedics might be liable for violating [his] right to due process by failing to treat his injuries.

*Salazar v. City of Chicago*, 940 F.2d 233, 237 (7th Cir.1991) (*citing DeShaney*, 489 U.S. at 199–200, 109 S.Ct. 998). The Seventh Circuit expressly did not limit the liability of the paramedics to cases where persons were in *their* custody, but extended it to include persons who in the custody of police *when the paramedics arrived*. The paramedics here attempt to distinguish *Salazar* by saying that the defendants' attorney there conceded that the plaintiff should be treated as a pretrial detainee, *id.*, which was not conceded here. The difference is immaterial. Mr. Ramirez, handcuffed and on his face, was certainly in custody and unable to seek other aid, something the paramedic defendants here do not deny. My rejection of this argument also disposes of the contention that the plaintiffs' state law claim should be dismissed because he was not in their custody. It doesn't matter as long as he was state custody.

**B.**

The paramedics then contend that they did not act under color of law, as required by § 1983. They argue that for a deprivation of constitutional right to be "under color of law," the deprivation must be caused, first, by the exercise of some right or privilege created by the State, and, second, by a person who may fairly be said to be a state actor. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). While they concede that, as government employees, they were state actors, they deny that they acted in virtue of a right or privilege created by the state.

But the phrase " 'under color of law' in § 1983 actions is now so broad that it means the same thing as 'state action.' " *Thomas v. Pearl*, 998 F.2d 447, 450 (7th Cir.1993) (*citing Lugar*, 457 U.S. at 935, 102 S.Ct. 2744, 73 L.Ed.2d 482). There is a good deal of case law concerning when the conduct of a private person counts as state action, something about which the courts have become rather demanding, but the paramedics here offer the novel theory that, although they are public employees acting in the course of their normal duties, they did not act under color of state law because any private paramedic might have done as much—or, in their case, as little. This argument is a curious inversion of the doctrine that a private person does not engage in state action unless it is a public function. *See Blum v. Yaretsky*, 457 U.S. 991, 1005, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). The Supreme Court has rejected precisely this inversion in the context of a duty to provide medical care:[2] "[T]he fact that a state employee's role parallels one in the private sector is not, by itself, reason to conclude that the former is not acting under color of state law in perform-

---

**2.** The paramedic defendants invoke *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), where the Supreme Court held that public defenders do not act under color of law when representing criminal defendants. This case shows that not all action by state employees is necessari-

ly state action, but the distinctive position of public defenders as persons not subject to administrative direction and with primary loyalties to their clients, *id.* at 322–23, 102 S.Ct. 445, make them distinguishable from Fire Department paramedics, and in fact, probably a unique case.

ing his duties." *West v. Atkins*, 487 U.S. 42, 57 n. 15, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1981) (*citing Griffin v. Maryland*, 378 U.S. 130, 135, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964)) ("If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity . . . .").

Finally, even if the paramedic defendants were not state actors, that would not get them off the hook if, as private individuals, they conspired or acted jointly with state officials, here, the police, who did act under color of state law, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), as plaintiffs here allege and I must therefore accept for the purposes of a motion to dismiss.

### C.

■ The paramedics then argue that they are entitled to qualified immunity. Qualified immunity should be granted when the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The very action in question need not have previously been held unlawful, but in the light of pre-existing law, the unlawfulness must be apparent. *Id.* Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The plaintiffs argue that it was not apparent from previously existing law that they had a constitutional duty to treat Mr. Ramirez, and so they did not knowingly violate the law, and are therefore protected by qualified immunity.

■ However, it would have been apparent to a reasonable Fire Department paramedic that he had the duty to provide medical care to a person in the custody of the police. The commonsense, natural, and obvious view is that taken in *Salazar:* if the plaintiff was in custody when the paramedics arrived, and so not free to seek other forms of assistance, then "the paramedics might be liable for violating [his] right to due process by failing to treat his injuries." 940 F.2d at 237; *see also City of Revere*, 463 U.S. at 244, 103 S.Ct. 2979; *DeShaney*, 489 U.S. at 199–200, 109 S.Ct. 998. The paramedics' arguments to the contrary are tortured, implausible, or have been expressly rejected by the Supreme Court. The Constitution does not always require the decent thing; sometimes it even protects abhorrent behavior, but not here. In this case, a reasonable person would have known that the right thing was also demanded by the law.

### D.

■ The paramedics argue, finally, that the plaintiffs' state claims fail as a matter of law because of the statutory tort immunity that Illinois makes available for governmental employees in certain circumstances. The paramedics invoke 745 ILCS 10/5–101, which immunizes a local public entity that "complete[ly] fail[s] to provide fire protection or other emergency services" to the public, *Pierce v. Village of Divernon*, 17 F.3d 1074, 1077 (7th Cir. 1994), but not one that "fail[s] to provide *sufficient* 'facilities' to suppress or contain a fire." *Id.* (emphasis added). As Judge Coar of this court has held, when "the City undertook to provide emergency services . . ., it no longer 'completely failed' to provide [such] services and any subsequent actions fell outside the scope of the immunity provisions." *Harrell v. City of Chicago Heights, Illinois*, 945 F.Supp. 1112, 1116 (N.D.Ill.1996). Moreover, "there are no provisions in the Tort Immunity Act that grant tort immunity to a local public entity that has undertaken to provide rescue or emergency services to the public for

injuries resulting from the failure to rescue individuals ...." *Id.* The paramedics also invoke 745 ILCS 10/6–106, but this is inapplicable, since it immunizes public employees from tort liability in connection with "diagnosis [or] treatment of mental or physical illness or addiction," but not from liability in connection with refusal to diagnose or treat an illness or injury.

Finally, as the plaintiffs argue, Illinois law provides for liability for persons licensed to provide emergency medical services whose "acts or omissions ... constitute willful and wanton misconduct." 210 ILCS 50/3.150. An act is willful or wanton if it is intentional or if it is committed under circumstances exhibiting a reckless disregard for the safety of others. *Meck v. Paramedic Services of Illinois,* 231 Ill.Dec. 202, 695 N.E.2d 1321, 1325 (1998). The paramedics do not deny that they either intentionally refused to help Mr. Ramirez or exhibited a reckless disregard for his safety. They contend, rather, that § 50/3.150 applies only to treatment and not to refusal to treat, but this flies in the face of the statutory language, which covers "omissions." I therefore deny the motion to dismiss the plaintiffs' state law claims.

### III.

The individual police officers move to dismiss several of the plaintiffs' claims and several of the plaintiffs as parties from certain claims. First, they argue that the state Wrongful Death Act claim (Count XV in the amended complaint) should be dismissed against Yolanda and Maria Eva Ramirez because the Act provides that "every action shall be brought by and in the name of personal representatives of such deceased person and the amounts recovered shall be for the exclusive benefit of the surviving spouse and next of kin ...." [3] 740 ILCS 180/1. Children can be "next of kin" in Illinois. *See Porter v.*

*Klein Construction Co.,* 113 Ill.Dec. 836, 515 N.E.2d 821, 823 (1987) (parents not the next of kin when a decedent leaves children)(*citing Wilcox v. Bierd,* 162 N.E. 170 (1928), *overruled on other grounds by McDaniel v. Bullard* 216 N.E.2d 140 (1966)). The officers do not allege that Omar Ramirez left a surviving spouse or dispute that the minor children cannot be represented by guardians. The motion to dismiss Yolanda and Maria Eva Ramirez as guardians of the next of kin must be denied.

Second, the officers contend that Yolanda and Maria Eva Ramirez, as guardians of Omar Ramirez's minor children, lack standing to bring federal causes of action against the individual officers (count IX in the amended complaint), because the proper party to bring these claims is Jesus Ramirez as personal representative and administrator of the estate of the deceased.[4] Section 1983 is silent on the question whether a decedent's constitutional claims survive his death, so I am to look to the most closely analogous state law to determine survivability. *Bass v. Wallenstein,* 769 F.2d 1173, 1188 (7th Cir.1985). I may not, however, mold the constitutional claim to fit within the parameters of state law. *Id.*

The Illinois Survival Act does not create a statutory cause of action but merely allows a representative of the decedent to maintain those actions he might have brought while alive. *Nat'l Bank of Bloomington v. Norfolk & Western Ry.,* 23 Ill.Dec. 48, 383 N.E.2d 919, 923 (Ill.1978). The guardians represent the next of kin and not the decedent's estate, and so they lack standing under the Survival Act. The motion is therefore granted insofar as their federal claims as guardians of the next of kin depend on the Survival Act. However, insofar as Omar Ramirez's

---

**3.** In the amended complaint the plaintiffs say that they do not object to striking Yolanda and Maria Eva Ramirez, as guardians of Omar Ramirez's minor children, from the state Wrongful Death Act claims, but then they make a claim to which the motion would seem to apply, so I analyze it as such.

**4.** *See* above note 3, *mutatis mutandis* (same with the guardians' § 1983 claim).

claims under these counts could be maintained by his next of kin through their guardians under the Wrongful Death Act, the motion is denied.[5] *See Spence v. Staras*, 507 F.2d 554, 558 (7th Cir.1974) (*citing Murphy v. Martin Oil Co.*, 308 N.E.2d 583 (Ill.1974)) (lawsuit my survive under Wrongful Death Act as well as Survival Act). Under the Wrongful Death Act, the guardians cannot recover on behalf of the next of kin for Mr. Ramirez's pain and suffering, as under the Survival Act, but they can recover for the wrongful death itself, *see Fetzer v. Wood*, 155 Ill.Dec. 626, 569 N.E.2d 1237, 1242 (1991), but that is all they ask to do in the amended complaint. There may be other bases of recovery as well. *See Nat'l Bank of Bloomington*, 23 Ill.Dec. 48, 383 N.E.2d at 923 ("The Wrongful Death Act is not the exclusive remedy when death results from a given tortious act.").

■ Third, the officers ask that I dismiss Count XI in the amended complaint, alleging a violation of a duty to protect Mr. Ramirez created in virtue of the special relationship created by their putting him in danger. They argue that the imposition of such duties contravenes the immunities provided to governmental entities under the Tort Immunity Act. However, the Illinois Supreme Court has said that "the special duty doctrine may not operate to impose liability upon a public entity after a court has found that entity immune from liability under the Tort Immunity Act." *Harinek*, 230 Ill.Dec. 11, 692 N.E.2d 1177, 1183–84 (Ill.1998). I have not determined that the City of Chicago or the individual officers are immune from liability under the Act, so the principle invoked is inapplicable here, and the motion is denied.

■ Fourth, the officers ask me to strike the request for punitive damages from Counts XI–XIV in the amended complaint, which are all common law causes of action, on the grounds that punitive dam-

ages are not recoverable under the Illinois Survival Act in actions based upon the common law. *See Ballweg v. City of Springfield*, 102 Ill.Dec. 360, 499 N.E.2d 1373, 1377 (1986) (recovery under the Survival Act limited to compensatory damages). There are two exceptions to the general rule of abatement of punitive-damage claims: (1) when a statutory basis exists for such claims or when such claims are an integral component of the regulatory scheme and of the remedy which is available under it; or (2) when strong equitable considerations favor survival. *Raisl v. Elwood Industries, Inc.*, 89 Ill. Dec. 100, 479 N.E.2d 1106, 1110 (1985). Punitive damages against individuals are an integral part of the regulatory scheme of § 1983. It is "generally established that individual public officers [are] liable for punitive damages for their misconduct on the same basis as other individual defendants." *Smith v. Wade*, 461 U.S. 30, 35, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Municipalities are not liable for punitive damages under § 1983, but that is in part because "deterrence of constitutional violations would be adequately accomplished by allowing punitive damage awards directly against the responsible individuals." *Bell v. City of Milwaukee*, 746 F.2d 1205, 1271 (7th Cir.1984). If I were to disallow the survival of the punitive damages against the individual officers, the deterrent purpose of § 1983 would be compromised. Therefore this motion must be also denied.

## IV.

I DENY (1) the paramedics' motions to dismiss the plaintiffs' federal and state claims against them. I also DENY (2) the officers' motion to dismiss Yolanda and Maria Eva Ramirez as guardians of Omar Ramirez's minor children from Count XV in the amended complaint, the Wrongful Death Act claim. The officers' motion (3) to dismiss the claims of Yolanda and Maria

---

5. The plaintiffs have headed these counts "Survival Action," and did not invoke the Wrongful Death Act, but a party is entitled to appropriate relief even if it is not demanded in the pleadings. *Kaszuk v. Bakery and Confectionery Union and Indus. Int'l Pension Fund*, 791 F.2d 548, 559 (7th Cir.1986); Fed R. Civ. P. 54(c).

Eva Ramirez, as guardians of Omar Ramirez's minor children, in Count IX in the amended complaint, is GRANTED IN PART, insofar as the survival of these causes of actions depends on the Survival Act, but DENIED IN PART insofar as Omar Ramirez's claims could be maintained by his next of kin through their guardians under the Wrongful Death Act or other applicable statutes. The officers' motion (4) to dismiss Count XI in the amended complaint, the state law special duty claims, is DENIED, and the motion (5) to strike the plaintiffs' request for punitive damages from Counts XI–XIV in the amended complaint is also DENIED. The officers' motion (6) to dismiss Jesus Ramirez's prayer for funeral expenses, being unopposed, is GRANTED. Finally, the plaintiffs' motion (7) to amend the complaint is GRANTED.